Good morning, Illinois Appellate Court, 1st District Court is now in session, the 4th Division, the Honorable Justice Robert E. Gordon presiding, case number 1-9-1-9-3-8, Kevin Claffey v. Virginia Huntley. With the lawyers who are going to argue the case, please introduce yourself to the court. Good morning, Patrick Giese for Kevin Claffey, Plaintiff Appellant. Lauren Meacham on behalf of Defendants Mark and Virginia Huntley. All right, now the appellant, are you going to reserve some time for rebuttal? Yes, yes, sir. Are we doing 15 minutes? 15 minutes. Sure. I don't expect to take more than 10 minutes. So if I could please reserve five minutes for rebuttal. Okay, that'd be fine. Let's proceed. Thank you. May it please the court, counsel. It's a privilege to be here. Thank you for the opportunity to appear before you today. At trial, Mr. Claffey was required to prove under the Animal Control Act that he was injured by the animal. That is undisputed. That he was conducting himself peaceably. That is undisputed. That he was in a place he had the legal right to be. That is also undisputed. And that he did not provoke this dog before it attacked him. The parties agree. This is the element that we are here to determine. Now, the evidence at trial demonstrated overwhelmingly that Mr. Claffey far exceeded his burden on each of these elements. And to put it bluntly, the jury got it wrong. And on those rare occasions where a jury does get it wrong, where the manifest weight of the evidence so clearly requires an opposite result, a reviewing court is required to step in to ensure that substantial justice is done. And this case is one of those rare occasions. And in an area of the law where courts have consistently applied de novo review and recognized that a jury's verdict in an animal attack case was not reasonable based on the evidence presented at trial. And in the Robinson case, that court instructed that the provocation issue can and should be considered on a case-by-case basis. And I would respectfully invite this panel to do that here. The critical facts are few and undisputed and can be boiled down to these. Mr. Claffey made no noise as he approached the home. He made no noise as he inserted mail into the mail slot, which, by the way, there was no mailbox on the street. There was no mailbox on the home. The only method to deliver the mail was through the mail slot. He did not view the dog that ultimately attacked him at any point on this day. He had no knowledge of the dog's location within the home on this day. He had no knowledge what the dog was doing in the seconds before the bite. He was attacked. The attack continued and persisted and resulted in serious injuries requiring surgical intervention. Now, the Robinson case teaches that not just any external stimulus amounts to provocation. And here, the evidence at trial revealed that the only stimulus was a few inches of Mr. Claffey's hand proceeding through the mail slot to deliver the mail. So you don't think you don't think that putting your hand in a mail slot could be considered provocation? Is that what you're telling us? Yes, correct, sir. That is OK. Now, did you make a motion for a directed verdict on that issue? Yes, sir. We did make a motion for directed verdict on liability that was denied. OK, and you and you're the one who asked for the jury, right? We did make a jury demand in this case. Yes. OK, thank you very much. Now, in the Smith and Robinson cases and in other cases where conduct was considered far more provocative than what this jury had to consider here. Appellate courts have reversed jury verdicts for dog owners and remanded for trials on damages alone. And we would respectfully suggest that consistent with that authority, that this court do the same. The other lens that our appellate court decisions on dog bite cases and animal attack cases have asked us to consider is the proportionality of the animal's response to the purported stimulus. And if we view it through that lens, we arrive at the same conclusion that permanent nerve injuries as a result of delivering the mail, an attack from that dog is not a proportional response to quietly sliding mail through a mail slot. I think everyone here would agree also the case law is consistent that the Animal Control Act exists to lessen the burden to recovery on animal attack victims and permitting this verdict to stand on this evidence, which really frustrate that purpose and increase the difficulty. On victims to obtain compensation in the future, an endorsement that this conduct amounts to provocation very well may result in what the Robinson court warned against, which is an Animal Control Act that is largely meaningless and that would yield unjust and absurd results. Here, where the only available delivery mechanism for a mailman was to insert letters through the mail slot, it's really not hard to envision fact scenarios in the future where there would be future victims that are singularly left without recourse. A Girl Scout delivering a box of cookies, a canvasser dropping off material, a neighbor dropping off a thank you note, these folks would be left entirely without redress if this verdict is permitted to stand. Now, I respectfully believe and suspect that my opposing counsel will use her time to suggest that the facts at trial demonstrated that the Huntley dog was protecting the home, which would be inviting this court to speculate, just as the jury in the court below was invited to speculate. There was also I have a question. So I believe the record indicates that before he opened up the mail slot dogs were barking, right, and that he also was familiar with these dogs in the sense that he knew that they were excited. So, you know, with reference to what you just raised that, you know, costs can argue they're protecting home. It sounds like he was aware that that's what the dogs were doing at that time when they started barking and he was aware that, you know, they were excitable dogs. And thank you for that question. Justice Reyes, I would I would respectfully take issue with just a couple of the assumptions that that have been made there. The evidence demonstrated that Mr. Claffey, yes, was aware that the Huntley's owned dogs. The evidence suggested that he had heard a dog barking, though, the location, the evidence showed was not immediately behind that front door. It was more likely in the backyard. And the fact that these dogs were excitable. I don't think equates to the dogs being especially territorial or protective and there was no evidence from the defendant owners to suggest that the dog in question was territorial or protective or aggressive. There was no expert testimony on the topic of whether this particular breed was territorial protective or aggressive and certainly no evidence that this particular dog was territorial protective or aggressive. And it would be. I don't think it would be consistent with the evidence presented at trial to suggest that the mechanism of injury here delivering mail quietly through the mail slot which had been done in the exact same fashion hundreds of times before with the dogs present suddenly on this day amounts to provocation. Councilor, let me interrupt you for just one moment. Just for point of clarification, you had indicated and you've made the point I think that there was no other way for Mr. Claffey to deliver the mail because there was no external mailbox. But is it not a fact that Mr. Claffey testified that on some occasions, he would bundle the mail and simply leave it between the door or but but but in fact not open that inner spring loaded door to put the mail inside the house. Yes, you are correct. Mr. Claffey did testify to exactly that at trial. He also testified to the fact that that would not be a complete and proper delivery of mail, which was something that he took pride in, and that it was his preference and the correct thing to do to deliver the mail through the mail slot, as he had done many times before. But he's not obligated though is he if he believes that there are dogs present or some other something that might may be hazardous to him. He's not obligated to deliver the mail in those circumstances, completely as you mentioned, is he, I think that's a fair point. Justice Martin I, I would, I would suggest to you that the evidence on this day, gave Mr. Claffey, no indication that there was an animal that was excited, or in his general vicinity. On the other side of this door, apparently waiting to, to, to bite him. There's no evidence to suggest that. Thank you. And I would, with the understanding on this dog protecting the home theory with the understanding that jurors are certainly permitted to use their common sense and their experience to draw reasonable inferences from from facts that have demonstrated at trial. Not every dog is protective. Not every dog is territorial. Certainly we've all walked into our friends home and found the family dog sleeping on the couch, even an especially protective or especially territorial dog is not necessarily protective and territorial at all times to assume with no evidence in support. However, in this case, that this dog was protective at the time of the bite is wholly unsupported by the evidence presented a trial. And so when you say when you say unsupported. You understand that a jury is the trier of the fact, and the jury makes the determination of the demeanor of a witness and jury decides who they're going to believe, and who they're not going to believe. And all those determinations are made by the trier of fact coming to their ultimate decision. So the jury doesn't have to necessarily believe everything that the plaintiff says. That's what your argument is based on the fact that this is what he said. So therefore, this must be believed. And that's really not the way the law works. But just proceed. Thank you very much, Justice Gordon and I understand your point. And and certainly would not cannot argue that it is for the trier of fact to evaluate credibility and that Mr classes testimony was the only testimony presented at trial on the occurrence. We have to weigh that evaluation with the fact that all of the damages evidence and causation evidence came in without objection. So we had we had undisputed evidence that there was an injury that that injury resulted in treatment that that treatment generated medical bills and all of that evidence except for the extent and duration of the injury came in without objection. And so we have a fact scenario where, in order for the jury to simply disregard everything that Mr class, he said they would also have to disregard all of this other evidence the doctor's testimony that this was a dog bite. The evidence from the veterinary record that the Huntley dog bit Mr classy the evidence from I don't think that that's an issue here. The medical is not the issue. I don't think here. I would I would agree with you, sir. And perhaps I'm making my my my argument in artfully I'm attempting to provocation is the issue in this case, it's certainly it certainly is. But for the jury to have returned a verdict in favor of the owners, they would have had to disregard every piece of evidence that came in. And, and it's hard to imagine a scenario where a reasonable jury could have properly evaluated evidence and returned a verdict of not guilty on these facts, and we know that because all this other stuff was undisputed. It must have been provocation that they were considering and under similar facts appellate courts have not hesitated to ensure that substantial justice is done. And in this case, I would respectfully request that this court act, similarly, and enter a verdict in favor of Mr classy and permit him an opportunity to present his damages case to a jury. Thank you very much. Okay. Let's hear from the FAA. And prepare for me to proceed. Yes. Thank you. May please the court justices council. My name is Lauren meet him and I represent Mark and Virginia Huntley in this case, while I will address the specifics of plaintiffs argument in greater detail later on. I think the court has very aptly noted what the issue is in this particular case and that is under the facts circumstances and reasonable inferences from the testimony. Was there sufficient evidence of provocation to allow the case to go to the jury and to allow the jury verdict to stand the burden on the issue of provocation rest squarely with the plaintiff. The plaintiff in this case has asked for relief on basically three different levels. The first one involves the directed verdict. And a court enters a directed verdict when they find that there is no evidence of a substantial factual dispute that the assessment of the credibility of the witnesses is not decisive to the outcome and determination of conflicting evidence is likewise not decisive to the outcome. The court views all of the evidence in the light most favorable to the defendant in this particular case plaintiffs argument on the directed verdict issue is actually surprising. At the time of trial, there was a discussion with the trial judge for the trial judge said, I think that this is an error free trial and the plaintiff agreed with that. And that was after the motion for directed verdict was denied and immediately prior to the time that the case was submitted to the jury. Alternatively, the plaintiff asked that this jury find in the jury verdict in favor of the defendant should be overturned in order to enter a judgment notwithstanding the verdict. The court must decide. Is there some evidence favoring the opponent of the motion? And if there is, is it overwhelmingly contradicted by the remaining evidence? Finally, plaintiff asked that this court overturned the trial court's ruling that the jury verdict was not against the manifest weight of the evidence. The trial court would have to have found that the jury verdict was unreasonable, arbitrary, and not based on any evidence in the record. So it's clear that this is an extraordinary remedy that the plaintiff is requesting in this case. So let's take a look at the trial testimony. And I think that you will see that there's ample support for this case having gone to the jury and for the jury's verdict. Plaintiff was delivering mail to the home of Virginia and Mark Huntley. And by his own admission, he had done it hundreds and hundreds of times. He knew that there were two dogs that live there. And he knew that those dogs reacted to the delivery of mail through the slot. On the day of the accident, plaintiff knew that the dogs were home because according to his testimony at trial, he heard one of them barking in the driveway around the back. Officer Sweeney from Animal Control also testified at trial. And in her report, she had a statement from the plaintiff that read, I could hear the dog barking. I placed the mail through the metal slot in the door. That's in quotations in her report. She was then asked the question, he told you he heard the dog barking and still went on and put the mail in the slot? Her answer was correct. She testified that in order to deliver the mail on the day of the accident, he had to put his fingers of his right hand through the slot and open the second mail slot with the idea then that he was going to put the mail in with his left hand. His right hand went into the hunkly home where the dog bit his finger, his right index finger on the underside. Now plaintiff was trying to explain in his testimony why this was peaceable, the actions that he undertook on that day. First of all, he said, well, he did it silently. Secondly, he had a whole group of questions that he answered regarding his quote unquote calling to safely deliver the mail. And on this particular day, what his calling seemed to have required him to do was to put his hand inside the home by using the mail slot. And as the court has again pointed out, on other days, he did this differently. He bundled the mail or he simply pushed the mail through the slot with his hand and didn't put his hand into the home. At trial, plaintiff offered no explanation as to why he didn't simply put the mail in there without putting his fingers in the slot or why he didn't just bundle the mail and leave it between the two doors. Counsel, I have a question. Sorry, I don't know. Counsel presents cases where provocation is based on physical contact, taunting, pushing, kicking. So none of this happened in this case. And also for the plaintiff to say that those are cases that indicate provocation here. There was no physical contact, no taunting, no picking on the animal. Can you respond to that? Sure. Counsel, did you understand the question? Do you understand the question? I do. Well, let me repeat it back to you just to make sure that I do. The question is, why in this case where there was no prior physical touching between the dog and the plaintiff, how does the case law explain why this could be provocation without physical contact? Yes. Basically, yes. So the case that I would point to is the stall case. And there was the only physical contact in that case was that he set the food inside this zone area that the dog was going to protect. And the only physical contact was things like, you know, the dog would lick his hand. The stimuli that ultimately got the dog to bite him in the stall case was that he looked at someone else and began to talk. So there wasn't any hitting, kicking, biting, you know, there wasn't anything like that between them prior to the time of the incident. And what the stall court talks about is the dog's territory and his protectiveness of the territory. And that's exactly what we're talking about here. The dogs were protective of the territory inside the house. And Mr. Claffey put his fingers all the way through the mail slot so that his fingers were inside the house. And the dogs reacted as any normal dog would do. And a number of the cases talk about that as well. What would a normal dog do? They reacted as any normal dog would do. And they probably came at the mail, but they certainly along the way also managed to bite his finger. But I don't think that that physical contact is required. It certainly wasn't present in stall. And in stall they did find provocation. Returning to the facts for a moment. Plaintiff also testified about this vicious attack where there was a tug of war. And what he's trying to do is reach those proportionality cases. But what was the injury in this case? A puncture wound to one finger requiring one stitch. Now, I agree that he had an aroma that had to be surgically repaired. But that really doesn't have anything to do with the viciousness of the attack. And all of this is clear as we discuss the case law. The trial court in this case on directed verdict got it right. They agreed with the plaintiff that the sole issue was provocation. And they found specifically that a reasonable jury could conceivably infer from the evidence in this case that sticking his entire hand or a portion of his hand through the mail slot could be construed as provocation. Now, when we look at the case law, it is very fact specific. In fact, the decisions are truly case by case. And it's difficult to create categories. The chart that was created by plaintiff really is more of an advocacy tool than it is a real analysis of the case. The analysis was the action of the plaintiff in sticking his hand through the mail slot, an act of provoking, stimulating, or exciting the dogs. And we look at that from the dog's perspective. Someone put their hand through the mail slot into the house. We've discussed the stall case. In stall, there's no doubt that the plaintiff entered the area that the dog was trying to protect. And that was found to be provocation. And it's the defense position in this case that that is the provocation and the stimuli that ultimately triggered the dogs to act. In Robinson, a case relied on by the plaintiff, it was a three-year-old girl. There's a knock at the door. The dogs react and start to bark. She gets scared. She screams. She's upset. One of the dogs attacks her, tears her lip, multiple puncture wounds, scratches on her face, neck, and throat. It was a proportionality case. It doesn't change the definition of provocation. And the court specifically found there, while plaintiff's frightened scream certainly triggered the attack on her by the dogs, the scream cannot be regarded under any reasonable standard to account for the savagery of the dogs. In our case, it was not out of proportion. The single puncture wound with the one stitch. Mesa is another case that the plaintiff relies on. That was a disabled person who goes into a building. It appears that that building is a place of business. She gets on an elevator, gets off on the fifth floor, only to find that that's a residence. And it's a residence that's protected by a guard dog. All she does is step off the elevator. Not surprisingly, that there was finding of no provocation. Plaintiff also cites Steichman, which is a case that involves a mail carrier. Other than the fact that it was a mail carrier, there's no similarity between the cases. The sole issue before the court in that case was whether spraying the dog with halt was provocation. And the court specifically found there that the plaintiff's acts in spraying the dog were not unpeaceable or provocative, because they were reasonable measures for self-protection. Well, that's not the case that we have here. There are a couple of other cases cited by the plaintiff. Neither of them have anything to do with this particular case. McEvoy, somebody let a dog off of a rope, and the dog ran between somebody's legs, and a 71-year-old woman managed to trip and fall. Wade was a damages-only appeal, and clearly inapplicable here. When you look at the cases, Stahl is the case that is applicable to this particular fact scenario. You can see the factual disputes that existed between the parties as to where the dogs were, what the plaintiff did in delivering the mail, how he chose to deliver the mail, whether they believed him or not, as to whether he actually had to put his hand that far into the mail slot. The credibility of the plaintiff was something the jury was in the unique position to evaluate. There's ample evidence to support the findings of the jury, and we would ask that the jury verdict be upheld, and the determination of the court in denying the motion for a directed verdict and denying the judgment notwithstanding the verdict be affirmed. Thank you. First, is there any other questions by any members of the panel? No, not right now. Okay, then let's hear the rebuttal. I apologize. Thank you very much, Justice Gordon. I'd like to first respond to the comment on the record made about an error-free trial. I've had the great privilege to have tried a few cases in front of Judge Lyons, and if you read up to the lead up to my comment, perhaps it's not clear on the cold read. This was a conversation being had in jest. There's a level of familiarity that is the context for that comment. I certainly hope that comment is not held against Mr. Claffey. It was made in jest. I'm going to try to respond sequentially to the critical points that I believe counsel made. With respect to Mr. Claffey knowing that the dogs were home, the evidence did not suggest that. Officer Sweeney's report indicated that he could hear the dog barking in the backyard. That was clarified. There are two dogs that the Huntleys owned on this day, and the location of one or both or neither was not certain. And Mr. Claffey was not aware of the evidence demonstrated as to the location specifically or precisely as to either dog. On the occasions where Mr. Claffey had bundled the mail and left it between the door, the main door and the glass door in front, on those occasions, Mr. Claffey explained that was when he knew the dogs were there. He did not know on this occasion. The still case is not helpful to this analysis. In that case, that dog's purpose was to protect the space that was unknown, protect the space, and it was a fenced in area that the plaintiff and his entire body entered. And then the dog was protecting that territory. There's no evidence in our case about the purpose for this dog biting Mr. Claffey's finger. There's none. I think opposing counsel speculated that the dog probably came at the mail and caught Mr. Claffey's finger. There's no evidence whatsoever to suggest that. What we know, based on the evidence at trial from Mr. Claffey, his surgeon, and the officer of the veterinary department who performed an investigation of this, is that the dog bit Mr. Claffey. We don't know if the dog was going for mail and bit his finger. I would also add that the Robinson case, which is very helpful to this court, because it was found that a level of conduct more provocative than that which is at issue here, was insufficient to amount to provocation, that it was a three-year-old is of no moment. The Animal Control Act does not have age requirements. It applies to every Illinois citizen. And the fact that some of these cases involve younger people doesn't move the needle one way or the other. Counsel, all dog bite cases are fact specific. You could look at this case, you could look at that case, but you're not going to find the same situation anywhere. The issue here is by putting your hand through the mail slot or your finger through the mail slot, can that be provocation? That's what the issue is. Understood. And that's solely the question. A jury or a fact finder can make any reasonable inference from the evidence they heard. And that's what this case is all about. It's not about this case or that case or any other case. You're past your time, but I'll give you a couple of minutes to sum up. I can wrap up. Justice Gordon, thank you for the opportunity. I would suggest that what you just pointed out is that juries are entitled to draw reasonable inferences from the facts presented at trial. I would respectfully suggest, and this will be my concluding remark. It is not a reasonable inference to be drawn on the basis of the evidence that this jury heard that quietly placing fingers into a mail slot to deliver mail amounts to provocation. Thank you very much. Well, thank you very much. You guys have given us a very interesting case. I think you did a good job in your briefs and a good job in your oral arguments. Both of you could be commended for that. And you'll have a decision very shortly and the court will be adjourned. But I asked the justices to remain for a few moments.